UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :

A.G.P./ALLIANCE GLOBAL PARTNERS, LLC,   :
                                           :

                    Plaintiff,      :
                                           :         24cv3879 (DLC)
             -v-                   :
                                           :       OPINION AND
T2 BIOSYSTEMS, INC.,                  :          ORDER
                                           :

                    Defendant.      :
                                           :
------------------------------------------ X

APPEARANCES:

For plaintiff A.G.P./Alliance Global Partners, LLC:

Kari Parks
Gusrae, Kaplan, Nusbaum, PLLC
120 Wall Street
New York, New York 10005

For defendant T2 Biosystems, Inc.:

Eric Foster Leon
Sarah Burack
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020

DENISE COTE, District Judge:

     Defendant T2 Biosystems, Inc. ("T2") has moved to dismiss this breach of contract action. For the following reasons, its motion is granted.

## Background

The following facts are taken from the amended complaint ("FAC") and the contract on which it relies.  These facts are assumed to be true for purposes of this Opinion.

On April 16, 2024, T2 and A.G.P./Alliance Global Partners ("AGP") executed an agreement for AGP to "serve as the exclusive placement agent, advisor or underwriter in a public offering (each, an **"Offering"**) of securities of the Company [T2] (**"Securities"**)" during the following 90 days ("Agreement"). (Emphasis in original.)  AGP agreed to provide its services without a retainer but was to be paid up to 7 percent of the aggregate gross proceeds raised in the Offering.  In the event no Offering was consummated during the 90-day term, AGP was entitled to reimbursement of "reasonable and documented" expenses not to exceed an aggregate of $50,000.

During the 90-day term of the Agreement, AGP agreed not to "contact or solicit" others "as potential purchasers of the Securities with respect to the Offering".  The parties agreed that New York law would govern the agreement and waived the right to a jury.

AGP introduced T2 to Investor A, but no public offering of AGP securities took place.  Instead, using the services of

another brokerage firm, Investor A made an $8 million investment in T2 through a private placement that closed on May 17.

On May 20, 2024, AGP sued T2.  T2 moved to dismiss the complaint, and AGP responded by filing the FAC on July 19, having been warned that it would not be given any further opportunity to amend the complaint.

The FAC pleads four claims.  They are for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and unjust enrichment.

T2 renewed its motion to dismiss, which became fully submitted on August 30, 2024.  On December 5, 2025, the action was reassigned to this Court.  On December 17, T2 informed the Court that it ceased operations in February 2025.  AGP has confirmed that it wishes the Court to resolve the outstanding motion despite having been told that T2 is defunct.

## Discussion

T2 has moved to dismiss the FAC for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P., and for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. While there appears to be subject matter jurisdiction over this action, the defendant is correct that the FAC fails to plead a viable cause of action.

I.   Subject Matter Jurisdiction

AGP has brought four state law claims against T2 and relies on diversity jurisdiction to file its lawsuit in federal court. It pleads that all of AGP's members are New York citizens. Pursuant to this Court's orders in December 2025 and January 2026, AGP has clarified the citizenship of the plaintiff's members.  Accordingly, the only remaining issue is whether the FAC adequately alleges that the amount in controversy is $75,000 or greater.  T2 contends that AGP has failed to satisfy the amount-in-controversy requirement for subject matter jurisdiction.

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction, and it must prove jurisdiction by a preponderance of evidence." Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613, 617 (2d Cir. 2019) (citation omitted).  The Second Circuit recognizes a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 814 n.5 (2d Cir. 2014).  As a result, "[t]he jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the

merits."  Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982).

"The sum claimed by the [plaintiff] controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  Washington Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 135 (2d Cir. 2020) (citation omitted).  "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."  Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

The FAC calculates that AGP is entitled to at least $560,000 in damages, equivalent to 7% of the $8 million investment.  This is presumed to be "a good faith representation of the actual amount in controversy."  Sec. Plans, Inc., 769 F.3d at 814 n.5.  T2 argues that, since the FAC acknowledges that there was no public offering, the maximum amount of damages which AGP may obtain under the Agreement is $50,000, well below the minimum amount necessary to obtain federal jurisdiction. While the defendant could ultimately prevail in reducing damages to less than $75,000, this result is not a "legal certainty" and thus insufficient to defeat subject matter jurisdiction.

Washington Nat'l Ins. Co., 958 F.3d at 25.  Accordingly, the case should not be dismissed for lack of subject matter jurisdiction.

II.  Failure to State a Claim

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  Doe, 100 F.4th at 94 (citation omitted).

A.  Breach of Contract

The FAC asserts that T2 breached the Agreement by issuing new securities without AGP's "participation or consent," by soliciting Investor A, and by failing to pay AGP its expenses and fees due under the Agreement.  T2 moves to dismiss the

breach of contract claim for its failure to state a claim.  It is undisputed that New York law governs this claim, as expressly required by the Agreement's choice-of-law provision.

Under New York law, a plaintiff bringing a breach of contract claim must show that "(1) a contract exists, (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages."  Martinez v. Agway Energy Services, LLC, 88 F.4th 401, 409 (2d Cir. 2023) (citation omitted).  When assessing a breach of contract claim, the court must give "the words and phrases in a contract . . . their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."  Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted).

The FAC fails to plead a breach of contract claim.  It does not identify any provision in the Agreement that requires AGP's approval for or participation in T2's private placement of its securities, bars T2 from soliciting any investor except with respect to a public offering, or that requires T2 to pay AGP anything more than reasonable and documented expenses when no public offering has been consummated.  Reading the Agreement as

a whole and giving effect to each of its terms, the FAC does not plead a breach of any of the Agreement's commitments.

In opposition to this motion, AGP identifies two terms of the Agreement which it contends were breached by T2. The first term is contained in the Agreement's Miscellaneous section. It is the commitment that T2 made in the Agreement to "not hinder A.G.P.'[s] efforts hereunder." AGP argues that this provision was breached when T2 conducted a private placement, which "destroyed any investor appetite for the Offering."

The FAC does not give fair notice to T2 of this theory of breach. In any event, reading the non-hindrance provision in the context of the entire Agreement, this newly minted theory of breach fails. The Agreement governed AGP's efforts to assist in a successful public offering of T2 securities. In its first paragraph, the Agreement acknowledged that a public offering may not occur. That paragraph stated that the consummation of the Agreement did "not constitute a commitment" by AGP to purchase the Securities or "ensure a successful Offering of the Securities." It also stated that nothing in the Agreement implied "that the Company shall have an obligation to issue any Securities," that is, make a public offering of its securities. Reading the non-hindrance provision as AGP suggests would vitiate other material provisions of the Agreement and

materially alter the parties' commitments to each other.  It would have the effect of restricting T2's ability to raise funds and require it to raise any funds only through a public offering in which AGP was engaged.  As a result, AGP's new reading of the Agreement fails.

The second provision on which AGP relies is in the 90-day exclusivity provision.  APG relies on the fact that the word securities in that section appears once with its initial letter in lower case -- as "securities" -- and not as the Agreement's defined term Securities, which has a capitalized S.  The sentence at issue reads as follows:

> During A.G.P.'s engagement hereunder: (i) the Company will not, and will not permit its representatives to, other than in coordination with A.G.P., contact or solicit institutions, corporations or other entities or individuals as potential purchasers of the Securities with respect to the Offering, provided that this clause shall not be construed to limit in any manner the Company from selling or issuing securities to (x) employees, directors or consultants in the ordinary course of business or pursuant to agreements currently in place prior to this engagement or (y) the Company's lender.

(Emphasis added.)

AGP argues that the use of the word "securities" in this sentence required T2 to obtain AGP's consent before it issued "any securities at all."  Not so.  Read in the context of the complete sentence, the non-solicitation provision applied to the

Offering, which is defined in the Agreement as a public offering of T2 securities.

B.    Implied Covenant of Good Faith and Fair Dealing

The defendant also moves to dismiss the FAC's claim that T2 breached the implied covenant of good faith and fair dealing. New York law implies such a covenant "in all contracts." Sec. Plans, Inc., 769 F.3d at 817. "Pursuant to this principle, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (citation omitted).

For the implied covenant to apply, "a party's action must directly violate an obligation that may be presumed to have been intended by the parties." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407-08 (2d Cir. 2006), certified question accepted, 7 N.Y.3d 837 (2006), and certified question answered, 8 N.Y.3d 283 (2007) (citation omitted). That is, "the implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted). The implied duty does not "add to the contract a substantive provision not included by the parties." Id. at 199 (citation omitted). Nor does it "extend so far as to undermine a party's general right to act on its own interests in

10

a way that may incidentally lessen the other party's anticipated fruits from the contract." M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (citation omitted).

AGP contends that T2 breached the fundamental bargain of the Agreement, that is, that AGP would forego up-front compensation if T2 refrained from working with other investment banks for 90 days. AGP further argues that T2's private placement of its securities breached T2's obligation to act in good faith and to refrain from hindering AGP's efforts undertaken on behalf of T2. These arguments, however, insert substantive restrictions into the Agreement not included by the parties. As already noted, T2's exclusivity and non-solicitation obligations extended only to a public offering, not all forms of financing. To interpret the implied covenant to broaden T2's obligations to non-public financing would be inconsistent with the Agreement's express terms.

C.    Conversion and Unjust Enrichment

The defendant moves to dismiss AGP's conversion and unjust enrichment claims. The FAC asserts that T2 wrongfully converted, and was unjustly enriched by, AGP's work product -- including its financial analyses, draft regulatory filings and other documents, and marketing efforts -- for its own benefit

and without compensation to AGP when it engaged in the private placement.

"Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." V&A Collection, LLC v. Guzzini Properties Ltd., 46 F.4th 127, 133 (2d Cir. 2022) (citation omitted). To state a claim of conversion, the plaintiff must allege that: (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused. Id. (citation omitted).

The FAC fails to allege facts sufficient to state a claim for conversion. Even assuming AGP has an ownership interest in documents that reflect the work product it created for the potential public offering, the FAC contains no allegations that AGP has been denied access to or use of that work product, or that AGP demanded its return and T2 refused. Consequently, the conversion claim must be dismissed.

A plaintiff bringing an unjust enrichment claim under New York law must plead "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience

12

require restitution." Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). But "unjust enrichment is not a catchall cause of action to be used when others fail." McCracken v. Verisma Systems, Inc., 91 F.4th 600, 608 (2d Cir. 2024) (citation omitted). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012). Thus, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citation omitted).

AGP's conclusory assertion of an unjust enrichment claim is merely an attempt to seek damages for the work it performed pursuant to the Agreement -- in other words, an impermissible substitute for T2's alleged breach of contract. For that reason, the unjust enrichment claim is duplicative and must be dismissed. Moreover, aside from reimbursement of reasonable expenses, the Agreement expressly conditioned payment to AGP for

its services on a successful public offering.  Equity and good conscience do not require damages where a party seeks to bypass a risk allocation -- specifically, a success-based payment contingency -- that was explicitly negotiated and agreed to in a written contract.

## Conclusion

The defendant's August 9, 2024 motion to dismiss is granted.  The Clerk of Court shall enter judgment for the defendant and close the case.

Dated:      New York, New York
            February 18, 2026

_____
DENISE COTE
United States District Judge

14